UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**TRACY BROWN, ET AL.,**

Plaintiffs,

v.                                                    **No. 4:24-cv-00902-P**

**UNITED AIRLINES, INC.,**

Defendant.

## OPINION & ORDER TRANSFERRING CASE

Before the Court is Defendants' Renewed Motion to Transfer. ECF No. 35. Having considered the Parties' briefs and applicable law, the Court **GRANTS** the Motion to Transfer. Accordingly, the Court **TRANSFERS** this case to the **United States District Court for the Northern District of Illinois**.

## BACKGROUND

Plaintiffs in this mass action are current and former employees of Defendant United Airlines, Inc., who raise various Title VII religious and disability discrimination claims stemming from Defendant's COVID-19 policies. *See* ECF No. 21 at 18, 710–14. Plaintiffs, who number more than seven hundred, live and work in locations throughout the United States. *See* ECF No. 21 at 18–78. Notably, more than five hundred Plaintiffs **have never** lived or worked in Texas, and only about a dozen have lived or worked in the Northern District of Texas. ECF No. 21 at 18–78; ECF No. 35 at 14.

Defendant is one of the nation's largest airlines. Although Defendant is headquartered in Chicago, Illinois, and incorporated in Delaware, Plaintiff alleges that Defendant's CEO resides in Dallas and has an office in the Dallas Fort Worth International Airport. ECF No. 21 at 78; ECF No. 41 at 7.

On September 23, 2024, Plaintiffs filed this mass action in response to their exclusion from the class this Court certified in *Sambrano v. United Airlines, Inc.*, another Title VII COVID-19 case against the same Defendant. 347 F.R.D. 155 (N.D. Tex. 2024), *appeal dismissed*, No. 24-10656, 2024 WL 6083707 (5th Cir. Sept. 6, 2024), *aff'd sub nom.*, *Kincannon v. United Airlines, Inc.*, 168 F.4th 713 (5th Cir. 2026); ECF No. 21 at 18. Defendant originally filed a motion to transfer this action on February 11, 2025, but this case was stayed on March 31, 2025, pending the Fifth Circuit's review of the *Sambrano* class certification. ECF No. 12; ECF No. 17. Plaintiffs filed their Second Amended Complaint on January 1, 2026. ECF No. 21.

After the Fifth Circuit affirmed *Sambrano*'s class certification in *Kincannon v. United Airlines, Inc.*, 168 F.4th 713 (5th Cir. 2026), Defendant filed a new Motion to Dismiss Plaintiff's Second Amended Complaint and a renewed Motion to Transfer on May 26, 2026. ECF No. 29; ECF No. 35. This Court ordered expedited briefing on Defendant's motions. ECF No. 37. Now that the Court has received full briefing, Defendant's motions are ripe for review.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Such transfer is between venues, not forums. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308 n.2 (5th Cir. 2008) (en banc). "It is well settled that the party moving for a change of venue bears the burden" of demonstrating good cause for why the forum should be changed. *JTH Tax, LLC v. Yong*, No. 4:22-CV-01008-O, 2023 WL 5216496, at *2 (N.D. Tex. Aug. 11, 2023) (O'Connor, J.) (internal quotation marks omitted). To carry that burden, the defendant must show that the transferee venue is "clearly more convenient than the venue chosen by the party." *In re Volkswagen*, 545 F.3d at 315. If the defendant does not meet this burden, then "the plaintiff's choice should be respected." *Id.*

2

Courts use a two-step inquiry to determine if transfer is proper. *See In re Volkswagen*, 545 F.3d at 312. *First*, they ask whether the plaintiff could have originally sued in the transferee district. *Id. Second*, they weigh the eight private- and public-interest factors to determine whether a venue transfer serves the convenience of parties and witnesses and is in the interest of justice. *Id.* at 315.

The Fifth Circuit's eight factors, four private and four public, are as follows.

The private-interest factors are: (1) the relative ease of access to source of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . .

The public-interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Id.* at 315.

## ANALYSIS

### A. The Court has discretion to address venue transfer first.

In assessing Defendant's Motion to Dismiss and Motion to Transfer, the Court must first determine if caselaw requires it to address the motions in a particular order, then must resolve the motions as appropriate.

Without jurisdiction, a court cannot proceed at all in any case. *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). Generally, a court must resolve any dispute to its jurisdiction before proceeding further with a matter. *Id.*; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Though this obligation to resolve jurisdictional

3

issues once carried a clear order of operations,[1] there is no longer a step-by-step approach to jurisdictional questions. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583–88 (1999). The Court held that there may be any number of jurisdictional questions before a court with varying levels of complexity that a judge may properly within his discretion turn directly to the issue offering the most expedient resolution. *Id.* at 587–88. This discretion permits courts to bypass subject-matter or personal jurisdiction questions "when considerations of convenience, fairness, and judicial economy so warrant." *Id.*; *see Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). In its contemplation of a jurisdictional inquiry, a court may choose to look at an issue of venue and its included factors to ensure that the pursuit of justice in a case is properly efficient. *Sinochem*, 549 U.S. at 435. Indeed, where a case is filed in the wrong forum, courts are authorized to take "the less burdensome course" and transfer the case, rather than address subject-matter jurisdiction. *Id.*

Here, the Court is faced with concerns about jurisdiction and venue—matters that must be addressed before proceeding to the merits. Courts enjoy broad discretion to resolve matters that deny parties an audience on the merits—including venue. *Id.*

As such, the Court in its discretion may resolve the jurisdictional questions before it in the order it deems most expedient. Accordingly, the Court chooses the "less burdensome course" and addresses Defendant's motion to transfer venue.

## B. This case could have been brought in the Northern District of Illinois.

Title VII contains a specific venue provision allowing an action to be brought:

> in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the

---

[1] In *Leroy v. Great Western United Corporation*, the Supreme Court asserted that personal jurisdiction is decided before venue, and subject matter jurisdiction is preliminary to both. 443 U.S. 173 (1979). This rule has since been replaced by the approach adopted in *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 583–88 (1999).

judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has its principal office.

42 U.S.C. § 2000e-5(f)(3). The district where an unlawful employment practice is committed has generally been held to be where the alleged discriminatory act occurred, not necessarily where its effects are felt. *See, e.g., Ausler v. ASG/DKS Installations, LLC*, No. 3:20-cv-3665-E-BN, 2021 WL 24542, at *2 (N.D. Tex. Jan. 4, 2021) (Horan, M.J.); *Kapche v. Gonzales*, No. V-07-31, 2007 WL 3270393, at *4 (S.D. Tex. Nov. 2, 2007) (Rainey, J.).

This case could have been brought in the Northern District of Illinois. The Title VII venue provision concurrently allows for this case to be brought where the relevant employment records are maintained, or alternatively where Defendant has its principal office. Defendant's headquarters in Illinois satisfies both. Indeed, "Plaintiffs do not dispute . . . that this action could have been brought in the Northern District of Illinois." ECF No. 41 at 4. Thus, the Court will now consider the private- and public-interest factors.

## C. The private-interest factors favor transfer because the Northern District of Illinois has easier access to proof and is more convenient for witnesses.

The private-interest factors to be considered are: (1) ease of access to sources of proof; (2) availability of compulsory process for witnesses; (3) the cost of witness attendance; and (4) all other practical factors that might make a trial more expeditious and inexpensive. *See In re Volkswagen*, 545 F.3d at 315.

In *Hassett v. United Airlines, Inc.*, this Court transferred similar Title VII COVID-19 litigation against this same Defendant to the Northern District of Illinois. No. 4:23-cv-00960-P, 2023 WL 12279500, at *3 (N.D. Tex. Oct. 5, 2023). There, an employee who had never lived or worked in the Northern District of Texas brought Title VII religious

discrimination and failure to accommodate claims. *Id.* at *1. This Court held that the Northern District of Illinois was more convenient partly because "all the pertinent records and data involved in this litigation will be in Defendant's possession in Illinois, as will the majority of Defendant's witnesses—like those involved in fashioning the vaccine policy." *Id.* at *2.

Here, as in *Hassett*, Defendant meets its burden to prove that private interests favor transfer to the Northern District of Illinois because Illinois is more convenient for witnesses and access to proof.

1. Sources of proof and witnesses are more accessible in the Northern District of Illinois.

Discovery in this case, as in *Hassett,* will likely focus on Defendant's representatives and documents produced regarding its policies and procedures, largely concentrated at its Illinois headquarters. ECF No. 35 at 15–16. This is true here even if one witness—Defendant's CEO—resides in the Northern District of Texas and a small number of records are technically accessible here. *See* ECF No. 41 at 7–8, 10. Thus, sources of proof will be more accessible in Illinois, so this factor weighs in favor of transfer.

2. Compulsory service of third-party witnesses is likely neutral.

Because most witnesses will likely be Plaintiffs themselves or Defendant's employees, these witnesses will likely voluntarily appear and not need compulsory service, so this factor is neutral.

3. Defendant has proved that the Northern District of Illinois is more convenient for willing witnesses.

The Fifth Circuit has held that after 100 miles in distance "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen*, 545 F.3d at 317. "Witnesses not only suffer monetary costs" like travel, lodging, and meals, "but also the personal costs associated with being away from work, family, and community," as well as "time . . . away from their regular employment. *Id.* Thus, "[t]he convenience of the witnesses is often regarded as the most important factor to be considered in deciding

6

whether to transfer venue." *The Whistler Grp., Inc., v. PNI Corp.*, 3:03-cv-1536-G, 2003 WL 22939214, at *3 (N.D. Tex. Dec. 5, 2003).

Here, witness convenience favors transfer. Travel costs are highly significant for Defendant's witnesses, and the Northern District of Illinois is not costlier for most Plaintiffs than the Northern District of Texas.

### a. Defendant's witnesses' inconveniences are significant.

Plaintiffs minimize Defendant's witnesses' inconveniences for three reasons: Defendant is an airline that can provide its witnesses with free flights, Defendant's CEO lives here, and Defendant has previously flown its officials here for the *Sambrano* COVID-19 litigation. ECF No. 41 at 11.

But convenience includes more than airfare. Convenience also includes other monetary costs—like lodging and meals—and "the personal costs associated with being away from work, family, and community." *In re Volkswagen*, 545 F.3d at 317. And here, Defendant's Illinois headquarters, the most likely location for witnesses, is nearly one thousand miles from the Northern District of Texas. At that distance, the monetary and non-monetary costs for Defendant's witnesses remain high even if Defendant were to provide them with free flights, especially in a time-consuming mass action with more than seven hundred individual Plaintiffs. That Defendant's officials have previously endured these inconveniences for *Sambrano* does not diminish the inconvenience—indeed, the Court wishes to spare these witnesses the burden of another *Sambrano*. And it is far less inconvenient for Defendant's CEO, who is likely used to travelling to Defendant's headquarters in Illinois, to do so for this case than for many of Defendant's managers and other witnesses to travel to Fort Worth.

Thus, if this case is transferred to the Northern District of Illinois, most of Defendant's witnesses will already be nearby, largely avoiding these costs.

7

> b. *The Northern District of Illinois is no less convenient for Plaintiffs than the Northern District of Texas.*

Most Plaintiffs will suffer inconveniences travelling to this District if the case is not transferred. Only about a dozen out of more than seven hundred Plaintiffs live or work in the Northern District of Texas, and even fewer in the Fort Worth Division. *See* ECF No. 21 at 18–78. More than five hundred Plaintiffs have no connection to Texas. ECF No. 35 at 14; *see also* ECF No. 21 at 18–78. In other words, it is already inconvenient for most Plaintiffs to litigate here, and the Court does not see why the Northern District of Illinois is any less convenient. *See* ECF No. 41 at 12; ECF No. 21 at 18–78. Thus, the convenience of witnesses on the whole still favors transfer.

Therefore, Defendant has shown that the Northern District of Illinois will be more convenient for its witnesses, and the Northern District of Illinois appears no less convenient for most Plaintiffs than the Northern District of Texas. Thus, overall, convenience for willing witnesses favors transfer to the Northern District of Illinois.

4. <u>The cost of litigation will be reduced by transferring this matter to Illinois and judicial economy will be served by having this case heard there.</u>

With Defendant in possession of almost all relevant evidence and witnesses in this case, the overall costs of litigation, attendance, and compulsion of parties' attendance will be greatly lowered. As Defendant notes, it is currently facing several other suits involving similar employment claims in the Northern District of Illinois. ECF No. 35 at 11. Thus, with Defendant's resources and witnesses located nearby and Plaintiffs mostly travelling from distances to Illinois as they would to Fort Worth, expediency and other practical issues are improved by transferring this case to the Northern District of Illinois.

Therefore, the Court concludes that, because most of the private-interest factors are neutral or weigh in favor of transfer, the private-interest factors as a whole favor transfer.

8

**D. The public-interest factors favor transfer because Illinois has a strong local interest and court congestion is slightly worse here.**

The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See In re Volkswagen*, 545 F.3d at 315.

Here, the latter two factors are neutral or inapplicable. But the remaining public factors move the needle toward transfer.

1. Court congestion and judicial economy favor transfer.

It is well-documented that the Northern District of Texas—particularly the Fort Worth Division—has a significantly busy docket. *See, e.g., Morado v. Archer-Daniels Midland Co.,* No. 4:25-CV-01017-P, 2025 WL 2933079, at *3 (N.D. Tex. Oct. 15, 2025); *Sigoloff v. Austin*, No. 4:22-CV-00923-P, 2023 WL 2142982, at *4 (N.D. Tex. Feb. 21, 2023). Granted, the Northern District of Illinois also has a busy docket. *See* ECF No. 41 at 12–13. But within the Northern District of Texas, the Fort Worth division is the busiest—two to three times busier than even the large docket managed by the Dallas Division. *See Outsourcing Facilities Ass'n v. United States Food & Drug Admin.*, No. 4:24-cv-00953-P, 2025 WL 1782574, at *1 (N.D. Tex. Mar. 26, 2025) (cleaned up). Thus, court congestion weighs in favor of transfer.

Plaintiff's suggestion that this case's similarity to *Sambrano* favors judicial economy is not persuasive. ECF No. 41 at 16. *Sambrano*, one of this Court's longest pending matters, has proved to be an immense burden on the Court's limited resources—*Sambrano* "has conferred on this Court anything but bliss." *Hassett*, 2023 WL 12279500, at *2 (emphasis removed). The Court, while sympathetic to Plaintiffs' desire to proceed in the same location as the *Sambrano* case in which they were not certified, has "little capacity to hear" another large, burdensome case when that case is "better suited in another venue." *Sigoloff*, 2023 WL 2142982, at *4. Thus, court congestion and judicial economy weigh in favor of transfer.

9

2. <u>The treatment of an Illinois company clearly pertains most to the citizens of Illinois, weighing heavily in favor of transfer.</u>

Localized interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *In re Chamber of Com. of the U.S.*, 105 F.4th 297, 308 (5th Cir. 2024). "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* As the Fifth Circuit has said, the local interests factor concerns non-party citizens. *Id.*

Here, "this Court cannot think of a more poignant local interest than having Defendant's case—as an Illinois resident—decided in Illinois." *Hassett*, 2023 WL 12279500, at *3. It is hard to think of a more concerned community than that of the Northern District of Illinois, where many residents work at Defendant's headquarters. By contrast, there is little unique or particular impact of this case in the Northern District of Texas. Again, only about a dozen of more than seven hundred Plaintiffs in this mass action have lived or worked in the Northern District of Texas, and several hundred have no connection to this state. Thus, local interests heavily weigh in favor of transfer.

3. <u>This Court and the Northern District of Illinois are both familiar with the applicable federal law, and there are no conflicts of law to avoid.</u>

The third and fourth factors are neutral or not applicable. The Northern District of Texas and the Northern District of Illinois are both familiar with the federal law governing this case, including its application to Defendant and similarly situated plaintiffs. *See, e.g., Sambrano v. United Airlines, Inc.*, No. 4:21-cv-01074-P, 2021 WL 5178829, at *2 (N.D. Tex. Nov. 8, 2021); *Reinauer v. United Airlines, Inc.*, No. 1:25-cv-14132, 2026 WL 1430494 (N.D. Ill. Nov. 19, 2025); *Anderson v. United Airlines, Inc.*, No. 1:23-cv-00989, 2023 WL 5721594 (N.D. Ill. Sept. 5, 2023). And federal jurisdiction in this matter rests on a federal question involving a uniformly applied federal statute, not diversity of citizenship. Thus, the familiarity with applicable law and conflict of laws factors are neutral or inapplicable.

10

Therefore, the public-interest factors, like the private-interest factors, are either neutral or weigh in favor of transfer to the Northern District of Illinois.

### E. The clear convenience of the Northern District of Illinois overcomes Plaintiffs' choice of venue.

"While a plaintiff's choice of forum should be respected, clear convenience in a transferee venue can overcome the deference afforded to a plaintiff's forum choice." *BNSF Ry. Co. v. Float Alaska IP, LLC*, No. 4:22-cv-0950-P, 2023 WL 3591683, at *3 (N.D. Tex. May 22, 2023) (citing *In re Volkswagen*, 545 F.3d at 314–15). Further, the weight accorded a plaintiff's choice of venue "is diminished where the plaintiff brings suit outside his home forum." *Santellano v. City of Goldthwaite*, 3:10-CV-2533-D, 2011 WL 1429080, at *2 (N.D. Tex. Apr. 14, 2011) (Fitzwater, C.J.) (citing *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349 (S.D.N.Y. 1988)); *see also TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) (Lindsay, J.).

Here, Plaintiffs' choice of this District is entitled to diminished deference to begin with because only about a dozen of the Plaintiffs have lived or worked in the Northern District of Texas. Further, having shown that the private- and public-interest factors favor transfer, Defendant has overcome Plaintiff's choice of venue by showing that the Northern District of Illinois is clearly more convenient than this District.

### F. Local Rule 62.2

Lastly, the Court determines that a stay of transfer would disrupt a just and expeditious resolution of this case. In September 2024, the Northern District of Texas updated its Local Rules to require a 21-day stay following any contested transfer order outside of the Fifth Circuit. N.D. Tex. L.R. 62.2. But under Local Rule 83.1, and "[n]otwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious." N.D. Tex. L.R. 83.1. An additional 21 days—particularly in a case seeking emergency relief—is not necessary, expeditious, or just.

11

The Court questions the legitimacy and practicality of Local Rule 62.2 (the "Rule"). In terms of legitimacy, the ostensible reason behind the Rule is to allow the *de facto* appellate review of a district court's decision to transfer a case to another circuit. But jurisdiction of federal courts to exercise appellate review is established by Congress and the United States Supreme Court—not the district courts, or even learned circuit courts, through local rules.[2] *But see United States v. Richardson*, 418 U.S. 166, 189 (1974) (Powell, J. concurring) ("We must as judges recall that, as Mr. Justice Holmes wisely observed, the other branches of the Government are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.") (quoting *Missouri, K. & T. Ry. Co. of Texas v. May,* 194 U.S. 267, 270 (1904)(cleaned up)).

The current venue statutes, 28 U.S.C. §§ 1391, 1404(a), 1406, and 1631 say nothing related to a district court needing to stay a case following a transfer order to another district, for any amount of time. In fact, 1404(a) is so broad that it allows transfer to "*any other district or division* where it might have been brought." 28 U.S.C. 1404(a) (emphasis added). And courts have long enjoyed "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d at 311. While the venue statutes have been enacted for decades, and Congress has had ample opportunity to amend them, the Rule seemingly

---

[2] Judges at every level of the federal judiciary are well to keep in mind Thomas Jefferson's sage prediction:

> It has long however been my opinion, and I have never shrunk from its expression, . . . that the germ of dissolution of our federal government is in the constitution of the federal judiciary; . . . working like gravity by night and by day, gaining a little today and a little tomorrow, and advancing its noiseless step like a thief, over the field of jurisdiction, until all shall be usurped from the states, and the government of all be consolidated into one. To this I am opposed; because whenever all government, domestic and foreign, in little as in great things, shall be drawn to Washington as the center of all power, it will render powerless the checks provided of one government on another, and will become as venal and oppressive as the government from which we separated.

Letter from Thomas Jefferson to Charles Hammond (August 18, 1821), *in* 15 THE WRITINGS OF THOMAS JEFFERSON 330–33 (Albert Ellery Bergh Ed.) (1905).

circumvents that process with a substantive rather than procedural revision.[3] "That is wrong coming and going." *Evans v. Garza*, 161 F.4th 315, 325 (5th Cir. 2025) (Oldham, J., dissenting).

As for practicality, the Rule forces district court judges to prioritize certain filings over others. For example, if a temporary restraining order and motion to transfer are filed at the same time, a judge may be forced to rule on the request for a restraining order given the 21-day waiting period the parties must endure—notwithstanding a clearly improper venue. And although the Court resorts to Local Rule 83.1 in this Order to avert the 21-day stay for the Parties' interests, it is clear that Local Rule 83.1 and this Rule are inconsistent. Moreover, the Rule necessarily infringes on a district court's charge to manage its own docket. *See Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) (holding that trial courts possess inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases").

Accordingly, notwithstanding the local rules, the Court has determined it is just and expeditious to **immediately** transfer this case

---

[3] Even if well-intentioned, the judiciary must tread carefully to respect the separation of powers and avoid encroaching on powers specifically belonging to Congress. As George Washington warned in his famous farewell address:

> The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism . . . Let there be no change by usurpation; for though this, in one instance, may be the instrument of good, it is the customary weapon by which free governments are destroyed.

George Washington, *Farewell Address* (Sept. 19, 1796), *in* 35 THE WRITINGS OF GEORGE WASHINGTON 228–29 (John C. Fitzpatrick ed., 1940). Along with President Washington, federal district judges tempted to step outside their lane are well to keep in mind Judge James Ho's recent admonition that "[t]here's a reason why there are jokes about God wishing that he was a federal district judge." Hon. James C. Ho, *Not Enough Respect for the Judiciary—Or Too Much? Arrogance and the Myth of Judicial Supremacy*, 24 HARV. J. L. PUB. POL'Y: PER CURIAM, 6 (2026). "So it's vital that district judges exercise their powers carefully and with integrity." *Id.*

to the **Northern District of Illinois** and directs the clerk to transfer the case without delay.

## CONCLUSION

The Court recognizes the gravity of this case and does not take this decision lightly. However, after serving over a decade on three different benches, experience has taught this Court to believe that "[v]enue is not a continental breakfast; you cannot pick and choose on a Plaintiffs' whim where and how a lawsuit is filed." *Chamber of Com. of United States v. Consumer Fin. Prot. Bureau*, 735 F. Supp. 3d 731, 740 (N.D. Tex. 2024), *vacated sub nom. Chamber of Com. of United States of Am. v. Consumer Fin. Prot. Bureau*, No. 4:24-CV-00213-P, 2024 WL 5052377 (N.D. Tex. July 16, 2024).[4] After careful consideration, the Court concludes the most convenient venue for this case is the Northern District of Illinois. Among other factors, proximity to Defendant's Illinois headquarters makes the Northern District of Illinois the more convenient venue for witnesses and evidence, and Illinois has a much stronger local interest in this case than the Northern District of Texas. Thus, having considered the relevant private- and public-interest factors, the Court concludes that this case should be and hereby is **TRANSFERRED** to the United States District Court for the Northern District of Illinois.[5]

**SO ORDERED** on this **25th day of June 2026**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[4] The Court's analysis could very well be different if Defendant were actually headquartered in the Fort Worth Division of the Northern District of Texas. Of course, the City of Fort Worth would welcome United Airlines with open-arms to our vibrant, business-friendly city. To get the process started, *see Business Services*, CITY OF FORT WORTH (last visited June 25, 2026), https://www.fortworthtexas.gov/business.

[5] The Court's silence on jurisdictional issues and any other issues raised by the parties is not an endorsement of any opinion on those issues. Rather, the Court is pursuing the "least burdensome course" to permit the most convenient, efficient, and judicially economic pursuit of justice in this matter.